Milligan J.,
delivered the opinion of the Court.
*78 John Aden departed this life in the County of Jefferson, in the year 1843, having previously made and published his last Will and testament, in which, after devising all his household and kitchen furniture to his wife, Nancy Aden, absolutely, he proceeds as follows, viz:
“I also give and bequeath to my wife Nancy Aden, all my real estate and personal property, for and during the term of her natural life; and after her decease, I give and bequeath unto my niece Hannah Jane Bryson, if alive at that time, all my personal property existing at that time, excepting the household and kitchen furniture. After the death of my wife, I will, if the said Hannah J. Bryson be not living at that time, all my real estate and personal property, with the exception of the household and kitchen furniture, unto the Baptist Nolacnucky. Association, to dispose of all my personal property, except household and kitchen furniture, on a credit of twelve months, or otherwise, at their discretion, to be appropriated to the support of old Baptist ministers of the Gospel of Jesus Christ, who have maintained a good character, and of the same’ faith and order of the Nolachucky Association.
“Next. I devise and direct that my land be never sold ; but that the said Association appoint and empower some discreet member of their own body, who shall be authorized to rent and receive rents, and apply the same for the above purposes, as directed, forever; and such agent, when appointed, whenever found incapable, from want of ability or otherwise, to manage as above directed, the said Association shall supply the vacancy by appointing another, which power I give into the hands of said Association, forever.”
*79 The Will names no executors, and was admitted to probate and record in the County Court of Jefferson County, at its December Term, 1843. The testator left no children surviving him, and the original bill in this case, was filed on the 15th of December, 1856, by Noah White, styling himself “the agent or trustee of the Baptist Nolachucky Association,” and claiming the bequest as a charity, and asking the Court to invest him and his successors in office, with title to the land devised, forever; and that the'defendants, the tenants in possession,, be ousted, and the yearly rents and profits be applied to the support of the “old Baptist ministers of the Gospel of Jesus Christ, who have maintained a good moral character, and of the- same primitive faith and order of the Nolachucky Association.”
The authority under which the complainant in the-original bill appears to have acted,, was conferred on-the 4th of September, 1856, by the annual session of’ the Primitive Baptist Nolachucky Association; and af-terwards, on the 22d of March, 1858, the same body,by deed of appointment, constituted Noah White, Ban-ard C. Headeriek, Samuel Hitt, Jacob Blackwell, and James Denniston, a Board of Trustees, with power, as-expressed in the deed of appointment, to sue and be" sued, to hold and possess real, personal, . and mixed property, and to do and perform all other acts and things necessary and proper to be done, as trustees, for the promotion of the interests of the Association. Under this appointment, they file an amended and supplemental bill, setting up, substantially, the same equities relied on in the original .bill.
The proof is very voluminous, and in some respects, *80 conflicting, ¿specially in reference to the particular branch of the Baptist Church — after the division of that Church— to which the testator intended his bounty. But in the view we have of this case, it is unnecessary to advert to that part of the testimony, or to decide the questions raised in argument upon it.
The testator’s niece, Hannah Jane Bryson, survived his widow, Nancy Aden, and she is still living, and a party defendant to this suit.
The Chancellor being of the opinion that he had no power to execute the charitable devise in favor of the complainants, dismissed the bill, and divided the costs of the cause, from which both parties appeal to this Court.
The law governing charitable uses is so well settled in Tennessee, that in this case there is little more to do than to apply the facts to the principles already adjudicated.
Charity, in its widest sense, denotes all the good affections men ought to have to one another; and in its non-restricted and common sense, relief to the poor. In neither of these senses is it employed in Courts of Ghancery. In England it means such charitable bequests only as are within the statute of 43d Elizabeth, and that Statute being not in force in Tennessee, it means here, only such as are definite in their objects and lawful in their creation, and to bo executed and regulated by trustees. In such cases, a Court of Chancery, by virtue of its extraordinary jurisdiction, will interpose in their execution: Green et al. vs. Allen et al., 5 Hum. 170, 204. Charitable uses are, however, so favored by Courts of Equity, that they have repeatedly been sus *81 tained in cases where, if trusts had been for other objects, they would have been void for uncertainty. It is eminently proper they should be favored, for donations of this character are usually made for the advancement .of education, morality and religion, or for the relief of the aged, destitute and disabled. Such objects strongly commend themselves to the Christian philanthropists of all nations, and justly meet the favor of Courts of Equity.
But the facts of this case do not fall within the rules of the well established law in this State, by which the devise of the testator could be executed as a charitable use for the benefit of the Baptist Nolachucky Association. The contingency upon which the devise was to pass to the Association, has never happened. By the plain language of the Will, it was only to take effect "if Hannah J. Bryson be not living,” at the falling of the life estate, which had been created in the testator’s widow. Hannah J. Bryson is not yet dead, and the bill to execute the devise to the Baptist Nolachucky Association, was, therefore, prematurely filed, and ought to have been demurred to, and dismissed on demurrer.
But this was not done, and it becomes necessary to look further into the case; and we do not think, if at the termination of the life estate, Hannah J. Bryson had been dead, to say nothing of the indefinite and uncertain purpose of the bequest, the complainants stood in any condition to take the devise. In the case of G-reen ef al. vs. Allen et al., 5 Hum., 209, it is laid down that a “charity must stand, or fall, as it was found to exist at the death of the testator. If it was not then legal and valid, no subsequent statute of the Legisla *82 ture can make it good, as it would be legislative action beyond its control.”
In this case, at the death of the testator, there was no one in being legally qualified to take the bequest. The Baptist Nolachucky Association had no legal or corporate existence, and the subsequent appointment of the complainants as trustees, did not cure the evil.
All this out of the way, this bequest is obnoxious to the objection of creating a perpetuity. It is declared in the Will: “I devise and direct that my land be never sold, but that the said association appoint and empower some discreet member of their own body, who shall be authorized to rent and receive rents,, and apply* the'same for the above purposes, as directed, forever.”
The bill of rights declares, “that perpetuities- and monopolies are contrary to the genius of a free State, and shall not be .allowed.” And this Court, in the case of Franklin et al. vs. Armfield et al., 2 Sneed, 315, 355, has said: “It is of the essence of a perpetuity that the property is incapable, beyond the period prescribed by law, of being sold, freed from limitations and trust, by the use of all means known to the law for effecting sales.” Then the land is never to be sold, and the rents and issues to be taken and applied by perpetual succession of the trustees, without limitation or powers of sale, to the objects of the devise; for that reason, as well as the others before assigned, a Court of Chancery could not execute it.
No application is made here for a construction of the other devises in this Will; and as it does not fully and satisfactorily appear whether the testator was a native born citizen or an alien, and if an alien, whether he had *83 been naturalized or not, we have contented ourselves with deciding such questions as are before us, and leave the parties free to institute such proceedings as they may think proper, hereafter, to settle the title to the lands devised.
"We affirm the Chancellor’s decree dismissing the bill; and direct that the complainants pay the whole costs of this cause.